### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION  DIVISION

**UNITED STATES OF AMERICA,**

**Case No. 5:03cr13-RH**

**vs.**                                    **Case No. 5:04cv230-RH/WCS**

**CESAR ESTRADA,**

   **Defendant.**

_____/

### REPORT AND RECOMMENDATION ON § 2255 MOTION

Pending is Defendant's amended 28 U.S.C. § 2255 motion.  Doc. 231.  The

Government filed the transcripts of rearraignment and sentencing.  Docs. 246 and 242,

respectively.  The Government filed a response in opposition to the § 2255 motion,

submitting the affidavit of defense counsel and letters written to Defendant from

counsel.  Doc. 247 and Attachment 2 (hereafter Att. 2).[1]  Defendant filed a reply.  Docs.

250.

_____

[1] The Government's Attachment 1 is a copy of the first page of the rearraignment
transcript.  Defendant references pages from both transcripts in his reply.  Doc. 250.
Therefore, it is clear that Defendant was provided with copies of both transcripts.

**Background**

Defendant entered a plea pursuant to a plea and cooperation agreement with the

Government, agreeing to plead guilty to count one of the indictment (doc. 1), charging

conspiracy to distribute and to possess with intent to distribute more than 100 kilograms

of marijuana, more than 5 kilograms of cocaine, and more than 50 grams of a

substance containing cocaine base.  Doc. 97, p. 2.  As set forth in the agreement, the

court would make any final determinations of facts and issues under the sentencing

guidelines.  *Id.*, p. 4.  The agreement provided:

> Defendant understands that any prediction of the sentence which may be
> imposed is not a guarantee or binding promise.  Because of the variety
> and complexity of issues which may arise under the Sentencing
> Guidelines, the sentence may not be subject to accurate prediction.

*Id.*  The Government agreed to file a substantial assistance motion if, in the sole

discretion of the United States Attorney, Defendant provided substantial assistance in

the investigation or prosecution of others.  *Id.*, pp. 4-5.

In the statement of facts, Defendant agreed that the Government could present

evidence set forth therein, and understood he could present his own version of the facts

to the court.  Doc. 98, p. 3 (acknowledgment).  According to the statement of facts,

Defendant was a supplier for a drug manufacturing and distribution organization during

the period alleged in the indictment.  *Id.*, p. 1.[2]  Cocaine and marijuana were transported

from Texas to Panama City, Florida, by members of the organization.  *Id.*  During the

relevant period, over $90,000.00 cash, 20 kilograms of cocaine, and 50 kilograms of

marijuana were seized from members of the organization by law enforcement in Texas.

---

[2] The indictment charged a conspiracy from on or about January 1, 2000, through
the date of the indictment, which was returned on April 1, 2003.  Doc. 1.

*Id.*, p. 2.  In July and August of 2002, more than 72 kilograms of cocaine, 2 kilograms of cocaine base, and 8 kilograms of marijuana were seized from stash houses and storage units in the Panama City area.  *Id.*

Following his guilty plea, Defendant was sentenced to 235 months imprisonment. Doc. 138 (judgment).  He did not appeal.  The Government did not file a substantial assistance motion either before or after sentencing.

**Standard of Review**

Defendant raises his claims in the context of ineffective assistance of counsel. "A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and must also "affirmatively prove prejudice." Strickland v. Washington, 466 U.S. 668, 690, 693-694, 104 S.Ct. 2052, 2066-68, 80 L.Ed.2d 674 (1984).  The court need not approach the Strickland inquiry in any particular order, or address both issues if an insufficient showing is made on one.  466 U.S. at 697, 104 S.Ct. at 2069.

Since Defendant challenges his guilty plea based on counsel's allegedly erroneous advice, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 467 U.S. 52, 58-59, 106 S.Ct 366, 370, 88 L.Ed.2d 203 (1985). For example, where the alleged error is counsel's failure to discover evidence, the prejudice inquiry depends on whether the alleged evidence would have changed counsel's advice to plead guilty, which depends on whether the alleged evidence would have likely changed the outcome if the case had gone to trial.  *Id.*

Moreover, in a challenge to a guilty plea:

[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. *Solemn declarations in open court carry a strong presumption of verity.* The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)

(emphasis added, citations omitted).

**Claims Raised**

In his § 2255 motion, Defendant asserts ineffective assistance of counsel with respect to his plea agreement, at sentencing, and failing to take an appeal. Doc. 231, p. 3 (ground one). He asserts as ground two that counsel was ineffective for failing to contest sentencing enhancements based on drug quantity and weapons, and failing to raise a claim under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Id.* The allegations are more detailed in Defendant's reply to the Government response. Doc. 250. The court addresses, with the individual § 2255 claims set forth below, those claims set forth in the reply which arguably clarify those claims.[3]

---

[3] Attached to the reply is an undated letter from Defendant to counsel. Doc. 250, attachment. In the letter, Defendant states:

there is a lot we need to talk about. You don[']t understand my situation. There is a [w]hole lot more to this case than what you think. If time is an issue you need to come and talk to me. If there came a time when I needed some legal advi[c]e this is it. "I'll be waiting."

This letter could have pertained to anything, that is, the plea, sentencing, appeal, or possible substantial assistance motion.

### Failure to Advise of the Potential Length of Sentence

Defendant asserts that counsel failed to advise him that a sentence could be longer than ten years, and advised him to enter a plea despite errors in the plea.  Doc. 231, p. 3.  Defendant does not identify those errors in his § 2255 motion.

In his reply, Defendant asserts that the court and the Government gave misleading information about the possible sentence at the time of the plea, "an error that cost him at least ten years more than he bargained."  Doc. 250, p. 2.  Defendant cites the portion of the rearraignment transcript where the court asked if there were any enhancements and the Government responded that there were not.  *Id.*, citing doc. 246, p. 18.[4]  Defendant claims that this was misleading because his sentence was ultimately enhanced under the sentencing guidelines.  *Id.*  Defendant claims that since the Government advised him and the court that there were no enhancements, pursuit of enhancements at sentencing violated his plea agreement.  *Id.*, pp. 4-5.

Defendant also asserts by reply that the court erroneously advised him that the shortest sentence he could receive was ten years and the minimum mandatory prison term took priority over the sentencing guidelines.  Doc. 250, p. 2.  He quotes the court's statement that, absent extraordinary circumstances he did not anticipate, the guidelines would not be substantially more than the ten years.  *Id.*, p. 3, citing doc. 246, p. 29.  He claims that "the Court and both counsel [were] agreeing that there would  be no substantial increase beyond the 10 year mandatory minimum which was false."  Doc.

---

[4] Defendant actually references the transcripts by date rather than number.  For ease of review the court references the document numbers assigned to the transcripts.

250, p. 4.  Defendant claims that this "created an impression" on him to enter the plea,
so "failure of the Court to sentence Estrada to 120 months invalidated the plea."  *Id.*

Defendant asserts in his reply that the court erred in advising him that, if it later
turned out that counsel's estimate of the guidelines range was incorrect, that would not
be a basis to withdraw his guilty plea.  Doc. 250, p. 3, citing doc. 246, p. 24; *see also*
doc. 250, p. 4 ("you have the Court telling Estrada he could not appeal the error of his
counsel . . . ").  Defendant claims this advice was incorrect.  *Id.*, p. 3, citing cases
concerning ineffective assistance of counsel in advice as to whether to plead guilty.

The following is the evidence concerning Defendant's claim that counsel or the
court failed to advise him of the potential for a sentence longer than ten years.  The
Government has submitted the affidavit of defense counsel Spiro Kypreos.  Attachment
2 to doc. 247 (hereafter Att. 2).  Submitted with the affidavit are letters from counsel to
Defendant, dated June 18, 2003, July 1, 2003, July 11, 2003, and a memo to Defendant
dated August 29, 2003.  Att. 2, pp. 3-7.  Defendant's rearraignment was held on July 17,
2003, and sentencing was held on October 14, 2003.  Docs. 99 and 135 (minutes).

With the letter of June 18, 2003, a month before the guilty plea, counsel enclosed
copies of the standard federal jury instructions for drug conspiracy, the indictment, and
documents "relating to your Texas arrest in 2001, your New Mexico case, and drug
weights."  Att. 2, p. 3.  Counsel advised Defendant that he faced a minimum of ten
years to a maximum life sentence, and that the sentencing guidelines range would be
based on drug weight, role in the offense, "firearm aggravator," and other factors, so
counsel could not accurately predict the score in advance.  *Id.*  Based on a "low ball"
estimate of drug quantity and a criminal history category I, counsel advised that

Defendant faced 235 to 295 months, or 19.6 to 24.6 years, in federal prison.  *Id.*

Counsel advised that it appeared the Government had a strong case "and it is in your

best interest to plead guilty and to begin cooperating immediately with the USA."  *Id.*

Counsel advised Defendant that his "best hope" was to try to earn a substantial

assistance motion, though there would be no guarantee.  *Id.*, p. 4.  Defendant was

advised, "[t]ime is of the essence.  If you plead out early you may earn a 3 Level

reduction.  Also, there is the danger the codefendant will plead out and become a

witness against you.  Moreover, the sooner you cooperate, the better chance that your

information can be used by law enforcement to catch others."  *Id.*  Defendant was also

advised that by pleading guilty he would waive his right to a jury determination, beyond

a reasonable doubt, of the drug weights involved.  *Id.*   d, p. 4.

With the letter of July 1, 2003, counsel enclosed the proposed statement of facts

and plea agreement.  Att. 2, p. 6.  Counsel advised that if Defendant signed the plea

and cooperation agreement, the court would make sure he understood there were no

guarantees he would receive a sentence reduction.  *Id.*  "While, as the agreement

makes clear, there is no guarantee," counsel advised Defendant that he should enter a

plea and cooperate, given the case against him.  *Id.*  He advised that if Defendant

changed his plea (to a guilty plea) they had to let the Government know by July 30,

2003.  *Id.*

Counsel's letter of July 11, 2003, was hand delivered.  Att. 2, p. 5.  This letter

may have been in response to Defendant's undated letter.  *See supra*, n. 3.  Counsel

said he understood Defendant's situation, as he could go to trial and probably be

convicted or "plead straight up and cooperate with the government. No deals." *Id.*

Counsel said:

> Is it scary pleading out not knowing [what] the sentence will be and you
> are probably looking at least 20 years under the guidelines (the minimum
> may end up being higher) and a maximum of life? You bet. But the
> alternative is worse.

*Id.*

Finally, in the memo of August 29, 2003, counsel said he passed on to Agent

Kane the information Defendant sent in his last letter. Att. 2, p. 7. Kane confirmed that

Defendant was "backing off information" previously given. "He [Kane] also indicated

that you and the codefendant are seriously attempting to minimize your roles –

particularly on drug weight, which is stupid since the weights you admit to guarantee a

lengthy sentence ase [sic] we discussed before your plea." *Id.* Counsel said if this

continued Defendant would not earn a substantial assistance motion, and advised

Defendant to cooperate fully with Kane in the hope of earning a Rule 35 (as it was

probably too late for a 5K1). "Again, no guarantees – other than the guarantee you will

do a lot of time with no hope of a reduction unless and until you fully cooperate with

Agent Kane." *Id.*

At rearraignment on July 17, 2003, the court advised Defendant that he faced a

minimum of ten years and a maximum of life in prison. Doc. 246, p. 18. In advising that

the minimum mandatory prison term was ten years, the court asked whether there were

"any enhancements," and the Government answered that there were not. *Id.* The court

then repeated that ten years was the shortest possible sentence, absent application of

the "safety valve" or substantial assistance to the Government. *Id.*, pp. 18-20.

Defendant was advised that the Government could file a substantial assistance motion allowing a sentence below the statutory minimum, or allowing a sentence below the bottom of the guidelines range, or one which would allow sentencing without regard to either minimum sentence. *Id.*, pp. 19-21.

In context, the court's question regarding "enhancements" was to any which would affect the possible minimum mandatory sentence. For Defendant to be sentenced to an increased punishment under the statute, the Government would have to comply with the notice provisions of 21 U.S.C. § 851. The Government did not file a notice and Defendant was not subject to this kind of an increase.[5]

Even if the court's question about "enhancements," standing alone, could have caused confusion in that moment as to other factors to be considered in calculating the guideline range, no confusion could remain in the context of the full hearing. Defendant said he understood that the lawyers would not necessarily know either the ultimate sentence under the guidelines, or all the facts that would be considered by the court. *Id.*, pp. 23-24. Defendant said he understood that he could not withdraw his plea if it turned out that counsel's estimate of the guidelines range was wrong. *Id.*, p. 24. He said he understood that the court could consider all relevant facts, not just the facts that they had talked about in the court room. *Id.* Defendant said he read the plea and cooperation agreement line by line and word by word before signing it. *Id.*, pp. 25-26.

---

[5] For his offense in violation of § 841(a)(1) and § 841(b)(1)(A), Defendant faced a minimum of ten years to a maximum of life. Had the sentence been enhanced for a prior felony drug conviction, he would have faced a minimum prison term of twenty years. § 841(b)(1)(A).

He said that he understood that nothing in the agreement limited the sentence the court could impose. *Id.*, p. 26.

> Counsel then told the court,

> And one other thing I advised him of, Your Honor, while I could not tell him how the guidelines are going to come out for the reasons that you have explained previously, but if the government proves the weights that they've claimed in terms of crack cocaine, that he would probably be at a Level 38, and so he's looking, under the guidelines, *I think at a minimum of 20 years.* So, he understands he's looking at a substantial minimum either way.

*Id.*, p. 29 (emphasis added). The court said:

> I went through telling you that the ten-year minimum mandatory takes priority over the guidelines. *But* it is true that, unless there are some extraordinary circumstances, *I wouldn't anticipate that the guidelines range is likely to be higher than the ten years.* I see the lawyers all nodding. Both of you understand that?

*Id.* (emphasis added).

It would appear that the court did not mean to use the negative here. The first sentence talked about how the ten year minimum mandatory sentence takes priority over the guidelines, which is true if the bottom range of the guidelines is less than ten years. Since the second sentence began with "but," a listener would expect that a contrary statement was forthcoming, that the guidelines would take priority over the ten year statutory minimum in other cases, if the bottom of the guideline range was higher than ten years. In any event, Defendant (and co-Defendant Quezada) said they understood. *Id.* Counsel promptly reiterated the point he had just made, that he had "explained, whichever is higher, is going to control, for some reason, they can't prove any weights. He understands, either way, *whichever is higher controls.*" *Id.* (emphasis added). The court agreed that was "a better way to say it." *Id.*

Given counsel's letters to Defendant, and his advice during the plea hearing, Defendant has not demonstrated that there was error of counsel to advise of him of the potential sentence.  Indeed, counsel's letter of June 18, 2003, a month before the plea colloquy, told Defendant that he anticipated that the bottom end of the lowest possible range would be 235 months, *exactly* the term of imprisonment ultimately imposed. Counsel told him again at the plea colloquy that the expected sentence was 20 years, or 240 months.  While the court's statement might have caused confusion, counsel's statements both before and after that statement plainly clarified that a sentence much higher than ten years was expected under the guidelines.  Ineffective assistance of counsel has not been shown.

Further, there is nothing in the foregoing that demonstrates any *promise* by the Government or the court that Defendant would be sentenced to ten years.  Defendant's claims are unpersuasive.

**Failure to File a Notice of Appeal**

In the § 2255 motion, Defendant claims that counsel was ineffective for "Failure to appeal sentence."  Doc. 231, p. 3.  Defendant states elsewhere in the motion:  "I wanted to appeal my conviction and sentence but my counsel abandoned me after the sentence hearing when I was transferred within two days of sentencing and I could not reach him nor did he attempt to communicate with me as he said he would have sentencing [sic]."  *Id.*, p. 4.

In his reply, Defendant alleges that "even the Court recognized that Estrada did not agree with the sentence computations and obviously an appeal was a serious issue for Estrada."  Doc. 250, p. 13, citing doc. 242, p. 39.  In response to the statement by

counsel in his affidavit that he was not asked to file an appeal, Defendant notes that counsel does not say they ever discussed it and argues that this is ineffectiveness per se, especially as the court told them to discuss it.  Doc. 250, pp. 13-14, citing doc. 242, p. 49.  Defendant claims counsel had a duty to discuss an appeal with him since he objected to the weapons enhancement.  Doc. 250, p. 14.  "Counsel failed to either file the appeal as requested or at least failed to discuss appeals with Estrada in any event." *Id.*, p. 16.

Defendant was advised by the court of his right to an appeal, that any appeal had to be filed in ten days, and that if unable to afford a lawyer then one would be appointed.  Doc. 242, pp. 48-49.  The court advised that the clerk would file a notice of appeal upon request, and "[y]ou just need to make sure, if you want to appeal, a notice gets filed within the next ten days."  *Id.*, p. 49.  "You should talk with your lawyer right now today, as soon as we break, to make sure that he has a clear understanding of whether you do or do not wish to appeal, and what his role will be in that connection." *Id.*

As raised in the § 2255 motion, the allegation of ineffectiveness in the context of filing an appeal is vague at best.  Defendant's reply was not signed under penalty of perjury.  Given the allegations, however, this issue should be remanded for further proceedings including, if necessary, a hearing.  Defendant should first be required to allege specific facts in support of his claim, including whether he expressly told counsel to file a notice of appeal, whether he even discussed the option of taking an appeal with counsel, or whatever the facts may be.  So that the court may assess the need for an evidentiary hearing, Defendant will be required to set forth the facts by affidavit, signed

under penalty of perjury.[6]  The affidavit should set forth the specific conversations (if any) he had with counsel regarding an appeal, including relevant surrounding circumstances, such as where and when the alleged conversations took place.  Failure to submit his affidavit may result in a recommendation that this claim be disposed of without an evidentiary hearing.

### Failure to Object to Sentence Enhancements

Defendant claims ineffective assistance of counsel for failing to object to sentencing enhancements based on drug quantity, possession of a weapon, and a prior DWI.  Doc. 231, p. 3.  Defendant claims that these enhancements were not contested by counsel, and counsel should have raised a claim under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  Doc. 231, p. 3.  Instead, Defendant claims, "[c]ounsel gave up on me and failed to present defenses or protect me in the case." *Id.*

In his reply, Defendant asserts that sentencing on the basis of enhancements not admitted or proved to a jury violated Apprendi and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).  Doc. 250, pp. 5-7.  Defendant asserts that the Government changed its theory on the weapons enhancement, and even the court admitted there was no notice of it.  Doc. 250, p. 7, citing doc. 246, pp. 4-7.  Defendant contends that the court tried to suggest to counsel that this was an issue, but counsel failed to comprehend the court's warning.  *Id.*, pp. 9-10, citing doc. 242, pp. 13-14, 23-

---

[6] *Cf.,* Blackledge v. Allison, 431 U.S. 63, 80-82 and n. 25 , 97 S.Ct. 1621, 1632-33 and n. 25, 52 L.Ed.2d 136 (1977) (noting that not every facially adequate claim requires a hearing, in habeas proceedings the court "may employ a variety of measures in an effort to avoid the need for an evidentiary hearing," but ordinarily the court should at least attempt to obtain affidavits).

25.  Defendant asserts there was not sufficient evidence, but merely surmise and conjecture, to support an enhancement based on the weight of the drugs or a weapon. Doc. 250, pp. 8, 11.

As to the prior conviction, Defendant cites Shepard v. United States, 543 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), as holding that "even a sentencing judge can not consider a police report description of the offense underlying a prior conviction to enhance his sentence."  Doc. 250, p. 11.  Yet in his case, Defendant argues, police reports were used without objection to enhance his sentence.  *Id.*  He claims the sentencing transcript shows "that there were no rules followed at sentencing that would comply with the Constitution and Apprendi, and that counsel simply failed to do his job." Doc 250, p. 11.

At rearraignment, Defendant was advised of the right to trial by jury, the right to counsel, to remain silent, and to confront witnesses.  Doc. 246, pp. 6-7.  He said he understood those rights and that by pleading guilty he gave up those rights and any defense he might have to the charge.  *Id.*, pp. 7-8.  Defendant was advised that at a trial, the Government would have to prove that the conspiracy involving the drug amounts charged in the indictment.  *Id.*, pp. 8-10.  Counsel also had earlier advised in his letter (discussed *supra*), that by pleading guilty Defendant would waive his right to a jury determination of the drug amounts charged.

Counsel explained to the court that there were paragraphs in the statement of facts describing things seized from other members of the conspiracy, and while Defendant did not dispute them, he did not have personal knowledge.  *Id.*, p. 10. Counsel said there had been a lengthy detention hearing at which Defendant was

present and the Government's evidence came out.  *Id.*, p. 11.  The Government had

provided DEA forms reciting facts, and before the plea hearing counsel provided

Defendant with the DEA forms, the standard jury instructions, and the plea agreement.

*Id.*  He said he advised Defendant that the Government appeared to have sufficient

evidence.  *Id.*, pp. 11-12.

Defendant told the court he had read the statement of facts line by line and word

by word before signing it.  *Id.*, p. 13.  Defendant clarified that while he was a "primary

supplier," he thought there were other suppliers to some of the other conspirators.  *Id.*,

pp. 14-15.  Defendant agreed with the court that he was supplying cocaine and

marijuana to an operation distributing it in the Panama City area, and that he and

Defendant Quezada were working together.  *Id.*, p. 15.  Defendant acknowledged that

that the cocaine they provided to the Panama City operation was in powder form, but he

came to know that they were later converting it to crack.  *Id.*, pp. 16-17.  He agreed the

amount of this cocaine distributed in Panama City was five kilograms or more.  *Id.*, p.

17.  Defendant said he was pleading guilty because he was, in fact, guilty, and the court

accepted his guilty plea.  *Id.*, pp. 31-32.

Sentencing was held almost three months after the plea, on October 14, 2003.

Doc. 242.  Defendant objected to the two level increase for a possession of a firearm

pursuant to U.S.S.G. § 2D1.1(b)(1).  *Id.*, p. 3; PSR, ¶ 74.

The basis for the two level increase of the offense set forth in the PSR was not

the same as that argued at sentencing.[7]  Government counsel explained that they were

---

[7] The PSR relied on possession of firearms by coconspirators; specifically, that "on May 11, 2002, Bobby Wilson was arrested . . . and was found to be in possession of a .380 caliber handgun and silencer.  The available information indicates that Wilson

"so fuzzy" on the source of the information in the PSR that they would not rely upon it, and would present an alternative theory for why the possession of firearms by co-conspirators was reasonably foreseeable to Defendants Estrada and Quezada.  Doc. 242, pp. 3-4.  Defendant's attorney asked, "just as a matter of some notice, due process, that the government announce before it presents its testimony exactly what theory they are relying on so the court can know what they're claiming and then whether or not the testimony matches up with the allegations." *Id.*, p. 5.  The court recognized the evidence might "create[] a real notice problem.  It may be that it doesn't.  To the extent that we're in the same place that we'd be in if we said, okay, let's take a week and come back, we might as well do it today." *Id.*  Counsel wanted to make it clear for the record that the Government was not claiming that Defendant Estrada ever possessed or delivered a firearm, or was physically present when a firearm was present. *Id.*, pp. 5, 48.

The Government presented testimony of DEA Special Agent Kane, who had interviewed more than 17 conspirators involved in this case. *Id.*, pp. 6-7.  He determined that a house on Pembroke Drive in Panama City was used in the Cedric Gadson conspiracy to store money and drugs, and a handgun was found along with a large quantity of narcotics in a search of the house. *Id.*, pp. 7-8.  Kane determined that a house on Shadow Bay Drive in Panama City was also used in connection with the conspiracy, to store drugs and money. *Id.*, p. 8.  He said that Gadson was the head of

---

received the firearm from co-conspirators Estrada and Quezada." ¶ ¶ 19, 75.  It was in good faith believed this information was correct, but they (Government counsel and agents) were not prepared to proceed on it because they did not recall the source of the information.  Doc. 242, p. 31.

the organization, and had firearms with him at the time of his arrest in October or November of 2002.  *Id.*, pp. 8-9.  Gadson told Kane that he and others in the organization used firearms, and it was common knowledge among the co-conspirators that firearms were used.  *Id.*, p. 9.  He said that on one of the trips to Texas for drugs, females were sent out to meet with two Hispanic males, middle men for drugs; it was Kane's understanding that the men obtained the drugs from this Defendant and Defendant Quezada.  *Id.*, p. 10.  The men robbed and raped two of the females, and Gadson and others went to Texas armed with firearms to get revenge.  *Id.*, p. 11.  They assaulted one of the men and a female in his house.  *Id.*  Kane said: "Everyone who I spoke to in Panama City knew of this."  *Id.*

Thereafter, the Gadson organization began dealing directly with Defendant and Quezada.  *Id.*, p. 12.  Kane said that Gadson made clear to Quezada that he used a gun in dealing with the rapist.  *Id.* p. 12.  On cross examination, however, he said Gadson "told me that he explained the details" to Quezada, but "whether or not he said there were firearms," Kane did not recall.  *Id.*, p. 20.

In a typical transaction where the Gadson people took a trip to Texas to pick up a load of drugs, they would bring approximately $300,000, sometimes more, sometimes less.  *Id.*, pp. 12-13.  Defendant and Quezada were usually together when the transactions were done in Texas.  *Id.*, p. 13.

On cross, Kane said that in the Florida residences, the guns were out in the open, and Defendant and Quezada had been to Florida to meet with the organization. *Id.*, pp. 21-22.  He did not have information that Defendant was ever present when Gadson was intimidating customers with a firearm.  *Id.*, p. 24.

Counsel for Defendant argued that there was no evidence to connect Defendant with any of the firearms seized, and while Gadson's use of firearms might have been common knowledge to the coconspirators in Florida there was no indication of Defendant's knowledge. *Id.*, p. 28. He argued that there was no evidence that Gadson reported anything to Defendant, or that Quezada reported what Gadson said to Defendant. *Id.*, p. 33.

The court asked about the short notice for the basis for the enhancement. *Id.*, p. 30. Counsel for Quezada did not object, noting that the new theory "inures to our benefit." *Id.* Counsel for Defendant did not object, but wanted "to drive home the point for the record" that "[t]hey completely changed theories." *Id.* It was agreed that more time to prepare would not help, that with better notice the testimony and cross examination remain the same, and they would all be in the same place. *Id.*, p. 31.

The court noted that there was possession of firearms by coconspirators, in furtherance of the conspiracy, and possession was while Defendant was a member of the conspiracy. *Id.*, p. 36. The "point of contention here" was whether that possession was reasonably foreseeable by Defendant. *Id.* The court noted that it had rejected the contention that drugs and guns always go together such that possession of a firearm is always foreseeable in a drug conspiracy. *Id.*, p. 37. This case, however, was a "substantial conspiracy." *Id.*

> The amount of drugs and money involved was very substantial. The number of people involved at any time was substantial. There had been a robbery, which these defendants must have known. It was their middlemen who participated in it, and that transaction is what led to the direct dealing between the Florida conspirators and these defendants.

> But even aside from the revenge trip and that circumstance, my conclusion would be that in a case involving this quantity of drugs, this amount of money, transportation of the drugs over this distance, that, under all of those circumstances, the possession of firearms for protection of the drugs and money is certainly foreseeable.

*Id.*, pp. 37-38.  The court cited cases in support of this conclusion.  *Id.*, pp. 38-39.

The Government advised that both Defendant and Quezada had been cooperating but, according to case agents, "in early debriefings both of the defendants were minimizing their responsibility a little bit, particularly with regard to the weight of the substances."  *Id.*, p. 41.  Still, both defendants were in a position where they could conceivably earn a Rule 35 motion.  *Id.*, pp. 41-42.  The agents were still working with Defendant and authorities in New Mexico were interested in talking to him.  *Id.*, p. 42.  It was asked that the court impress on Defendants the importance of being truthful about what they did.  *Id.*

The court advised that, if the Government did file a substantial assistance motion, the court would then try to determine whether each defendant had been completely candid in deciding the amount of a sentence reduction.  *Id.*, p. 44.  The court further warned:

> What that means is, don't hold back.  Don't minimize what you did.  Don't minimize what other people did.  Don't cooperate against, you know, tell the truth about people that you don't like, but not tell about people that you do like.

> The best way to do this is just to tell the truth and the whole truth, and let the chips fall were they may.

*          *          *

> . . .  As long as you tell the complete truth, then you don't get crossed up [on your facts], and that's the best way to get this substantial assistance motion.

So, tell them the truth, and let the chips fall where they may.  Don't try to
hold back.  Don't exaggerate.  Just tell the truth.

*Id.*, pp. 44-45.

With regard to drug quantity, Defendant has not identified any sentencing

objection counsel could have made under Apprendi or subsequent cases, given his

guilty plea to the quantities as charged in the indictment.  "Any fact (other than a prior

conviction) which is necessary to support a sentence exceeding the maximum

authorized by the facts *established by a plea of guilty* or a jury verdict must be admitted

by the defendant or proved to a jury beyond a reasonable doubt."  United States v.

Booker, 543 U.S. 220, __, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005) (reaffirming the

holding in Apprendi) (emphasis added).  Defendant entered a guilty plea to the

indictment as charged, so the facts established by his plea and admissions under oath

supported the sentence.

As to the weapons offense level increase, Defendant has not shown that counsel

was ineffective for failing to object to the Government's change of theories.  Everyone

agreed that they were in "the same place" they would have been if more notice had

been given, and Defendant has offered nothing to dispute that.  Defendant has not

shown what counsel could have argued or proven if given additional time.  Indeed, as to

all of the guideline increases, aside from the Apprendi claim (addressed ahead),

Defendant has not shown any arguments counsel could have made which could have

affected the outcome.  His claim that the enhancements were supported by surmise or

conjecture rather than evidence is contradicted by the transcripts, as set forth above.

Defendant has not shown ineffective assistance of counsel as to any potential Apprendi.   At the time of Defendant's plea and sentencing, this circuit looked to the statute as the source of the "maximum sentence" for Apprendi purposes, and had held that Apprendi did not apply to the calculation of the sentencing guidelines within the statutory maximum.   United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir. 2001), *cert. denied,* 535 U.S. 942 (2002) (holding that Apprendi did not apply to the guidelines, which determine the sentence within the statutory range).   *See also* United States v. Reese, 382 F.3d 1308, 1312 and n. 2 (11th Cir. 2004), *vacated*, __ U.S. __, 125 S.Ct. 1089, 160 L.Ed.2d 1058 (2005) (even after Blakely, "district courts should continue to sentence pursuant to the Guidelines until such time as the Supreme Court rules on this issue," noting in the footnote that oral argument had been scheduled in Booker).

Thus, the claim was foreclosed by circuit precedent at the time of Defendant's sentencing.   Counsel was not ineffective for failing to raise the argument, ultimately successful in Blakely and Booker, which had been rejected by the circuit courts at that time.   *See* United States v. Duncan, 400 F.3d 1297, 1308 (11th Cir.), *cert. denied,* 126 S.Ct. 432 (2005) (noting that before Blakely, "every federal court of appeals had held that *Apprendi* did not apply to guideline calculations made within the statutory maximum.") (citing Sanchez, other citations omitted).

To the extent Defendant seeks relief under Booker and Blakely directly (rather than through a claim of ineffectiveness), he is not entitled to relief.   Booker and Blakely, both decided after Defendant's conviction became final, do not apply retroactively on collateral review.   Varela v. United States, 400 F.3d 864, 867 (11th Cir. 2005).

Regarding his prior conviction used to calculate criminal history, Defendant's reliance on <u>Shepard</u> is misplaced.   *See* <u>United States v. Cantellano</u>, 430 F.3d 1142, 1146-47 (11th Cir. 2005) (<u>Shepard</u> decided an issue of statutory interpretation, and restricted the sources to be considered by the court only in determining the character, not the fact, of a prior conviction; <u>Apprendi</u> and progeny do not apply to use of prior convictions for enhancement of sentence).

**Violation of Rule 32**

In his reply, filed on May 11, 2005, Defendant claims for the first time that the court said it would give him the opportunity to address the court, but then failed to do so in violation of Fed.R.Crim.P. 32(1)(4)(A).  Doc. 250, p. 15, citing doc. 242, p. 40. Defendant claims he would have spoken if the court had asked him personally, rather than asking counsel if Defendant wanted to address the court.  *Id.*

This is a new claim which does not relate back to the § 2255 motion, and is untimely under the one year limitations period of § 2255.[8]  Regardless of the time limit, however, this does not state a claim upon which relief may be granted.

The court told Defendant that "[y]ou can make any statement that you would like to, and Mr. Kypreos can make any statement that he'd like to on your behalf."  Doc. 242, p. 40.  Counsel made a statement, then the court asked "[a]nd Mr. Estrada does not

---

[8] The time generally commences from "the date on which the judgment of conviction becomes final," unless a later commencement date applies.  § 2255. Judgment was entered on the docket on October 16, 2003, and Defendant had ten days (excluding intermediate weekends) to appeal.  Fed.R.App.P. 4(b)(1)(A) (time to appeal) and 26(a)(2) (computation of time).  The one year expired on or about Monday, November 1, 2004, and the reply was filed on May 11, 2005.

wish to make a separate statement himself, correct?" and counsel responded that that was correct.  *Id.*

Defendant does not show a failure of the court to allow him the opportunity to speak.  The court personally addressed the Defendant and invited him to speak if he wished.  Defendant could have spoken up if counsel was mistaken about his desire to personally address the court.

Moreover, even if shown, the failure of the court to give Defendant an opportunity for allocution is not an error of the magnitude to justify § 2255 relief.  Hill v. United States, 368 U.S. 424, 429, 82 S.Ct. 468, 472, 71 L.Ed.2d 417 (1962); United States v. Tamayo, 80 F.3d 1514, 1518-19, n. 5 (11th Cir. 1996) (reiterating that the right to allocution is not constitutionally based, collecting cases).

**Recommendation**

It is therefore **RECOMMENDED** that Defendant's claim regarding counsel's failure to file a notice of appeal be **REMANDED** for further proceedings, and that the amended § 2255 motion, doc. 231, be **DENIED WITH PREJUDICE** as to all other claims.

**IN CHAMBERS** at Tallahassee, Florida, on February 10, 2006.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**